## HICKS *v.* THE STATE.

1. An indictment which charges murder "by choking and by other means to the jurors unknown" is not demurrable on the ground of indefiniteness in its description of the manner of the killing.
2. The competency of a witness is a question for the court and not for the jury. Under the facts of this case the court properly admitted the testimony of the witness whose competency was attacked, and there was no error in failing to submit to the jury the question of the witness's competency.
3. The newly discovered evidence being of an impeaching character, there was no error in overruling this ground of the motion for new trial.
4. In the light of the entire charge, there was no error in any of the rulings of which complaint is made. The evidence was sufficient to sustain the verdict.

Submitted October 3, — Decided October 13, 1898.

Indictment for murder. Before Judge Littlejohn. Macon superior court. June 11, 1898.

To the facts stated in the opinion it is necessary to add only that the preliminary examination of the child referred to in the second division was as follows: Q. How old are you, Joe? A. I am ten years old. Q. Who made you? A. God made me. Q. Is it right or wrong to tell the truth? A. It is right to tell the truth. Q. What about a story? A. A story is a lie. Q. Well, is it right to tell a story? A. No, sir. Q. Do you know what they would do to you if you told a story here? A. Yes, sir. Q. What would they do to you? A. They would put me in the guard-house. Q. What becomes of good folks when they die? Where do they go? A. Some of them go to hell, and some of them go to torment. Q. Well, the good folks, where do they go? A. They go to heaven. Q. What becomes of bad folks when they die? A. They go to the devil. Q. What have you sworn to tell in this case? A. To tell the truth.

Cross-examined: Do you know what an oath is? A. No, sir. Q. Do you know what is meant when anybody swears? Do you know what swearing is? A. Yes, sir. Q. What is swearing? A. To lie. Q. Well, now, if you swear anything, does that mean that you are going to lie? A. I don't know, sir. Q. You don't know what swearing is, then? A. Swearing is the truth. Q. Do you know what you held up your hand for just now, when you were sent in that room? A. Yes, sir. Q. When Mr. Hooper said a few words to you, do you know what that was for? A. Yes, sir. Q. What was it for? A. It was for the truth. Q. What did he do when he did that? A. I don't know, sir. Q. Do you know what he did that for? A. No, sir. Q. You don't know what he did that for? A. To tell the truth.

*W. G. Harrison, W. C. Munday* and *J. K. Hines,* for plaintiff in error. *J. M. Terrell, attorney-general,* and *F. A. Hooper, solicitor-general,* by *C. R. Crisp,* contra.

SIMMONS, C. J. 1. The following special presentment was returned by the grand jury of Macon county: "The grand jurors, . . in the name and behalf of the citizens of Georgia, charge and accuse Jeff Hicks with the offense of murder, for that the said Jeff Hicks, on the 24th day of April, in the year 1898, in the county aforesaid, did then and there unlawfully and with force and arms, by choking and by other means to the jurors unknown, feloniously and of his malice aforethought, kill and murder one Miley Hicks, in the peace of the State, being contrary to the laws of said State, the good order, peace and dignity thereof." When Hicks was arraigned he demurred to the presentment on the ground that it was "wanting in that degree of definiteness which defendant has a right to demand before going to trial on the merits of the case, in that the language of said special presentment is too vague and indefinite, as to the kind of weapon used and the means used in committing the said murder, as to enable this defendant to prepare his defense to said special presentment." This demurrer was overruled, exceptions pendente lite were taken, and error here assigned thereon.

Section 929 of the Penal Code declares that every indictment shall be deemed sufficiently technical and correct, "which states the offense in the terms and language of this code, or so plainly

that the nature of the offense charged may be easily understood by the jury." It will be seen from the presentment that the accused was charged with murder, the day and year of the commission of the offense were alleged, and it was alleged that the killing was done feloniously and with malice aforethought. The manner of the killing was alleged to have been "by choking and by other means to the jurors unknown." The presentment states the offense in the terms and language of the code, and the nature of the offense could easily be understood by the jury. The accused could likewise understand, from reading the presentment, that he was charged with the offense of murder by choking the woman named in the presentment, or by other means to the jurors unknown. It is argued by counsel for plaintiff in error that there are many different kinds of choking, and he refers to the definitions of the word given by certain lexicographers. The plain, every-day meaning of the word "choking," as we understand it, is to prevent or interfere with the passage of air through the windpipe, either by internal obstruction or by external pressure. To "choke" a person is, in other words, to fill his mouth or throat with a towel or other substance, or to seize and compress his throat, so as to obstruct his breathing. This is what the grand jury meant when they used the word, and this is what the accused must have understood when the presentment was read to him. Upon the subject of the sufficiency of indictments in alleging the mode and manner of committing the crime, see *Studstill* v. *State,* 7 *Ga.* 16; *Hill* v. *State,* 41 *Ga.* 501; *Peterson* v. *State,* 47 *Ga.* 524; *Coxwell* v. *State,* 66 *Ga.* 309; *Thomas* v. *State,* 71 *Ga.* 44. The presentment alleges that the killing was done "by choking," and also "by other means to the jurors unknown." It appeared from the evidence introduced in the trial of the case, after the demurrer had been overruled, that the circumstances of the killing would not admit of greater certainty in stating the means employed in committing the offense. It was held in the case of Commonwealth v. Webster, 5 Cush. 295, that "An averment in an indictment for murder that the defendant committed the crime at a place specified, 'in some way and manner, and by some means, instruments, and weapons to the jurors

unknown,' is sufficient, when the circumstances of the case will not admit of greater certainty in stating the means of death." We think, therefore, that the court did not err in overruling the demurrer to the presentment.

2. Pending the trial a child ten years old was offered by the State as a witness against the accused. It was objected by counsel for the accused that she, on account of her tender years, did not know the nature of an oath and was not competent to testify. The court examined the child fully and fairly as to her knowledge of the nature of an oath, and her answers clearly show that she did understand the nature of an oath, and believed she would be punished if she swore falsely upon the trial. This was a matter for the court to decide, and we think, from the evidence disclosed by the record, that it was not error to admit the testimony of the child. Upon this subject, see *Moore* v. *State*, 79 *Ga.* 498, and cases there cited; and *Minton* v. *State*, 99 *Ga.* 254.

It was also argued here that the court erred, after having decided that the child was competent as a witness, in not submitting that question to the jury in his charge. The competency of witnesses is always for the court, and we know of no law in this State which requires the trial judge, in a case like the one under consideration, to submit to the jury the question of a witness's competency. The court decides the competency, the jury the credibility of a witness. The jury may look at a witness whose competency has been attacked on account of youth, hear the evidence, and, if the evidence be confused, inconsistent, wild and reckless, they may in their discretion refuse to give it credit, as they would that of any other witness who was discredited.

3. We have read the affidavits containing the newly discovered evidence. All of this evidence which would be legally admissible on the trial is impeaching in its character, and the court did not err in refusing to grant a new trial upon this ground.

4. There are several complaints of error of law in given extracts of the charge of the court. The judge, in approving the motion for new trial, states that these extracts are incomplete, and an examination of the record shows that this is true and

that in some places portions of sentences have been omitted from the extracts contained in the motion.   When read in connection with the entire charge, the charges complained of contain no error.   One ground complains, of the charge given on the subject of confessions, but the trial judge certifies that this charge was given at the request of counsel for the accused.   This being true, counsel are estopped to assign error thereon.

A careful examination of the whole case as disclosed by the record enables us to find no error which would authorize this court to grant a new trial.

*Judgment affirmed.   All the Justices concurring.*